143 P.3d 1120 (2006)
The PEOPLE of the State of Colorado ex rel. PUBLIC UTILITIES COMMISSION of the State of Colorado, Plaintiff-Appellee,
v.
Robert ENTRUP, Defendant-Appellant.
No. 05CA0130.
Colorado Court of Appeals, Div. V.
July 27, 2006.
*1122 John W. Suthers, Attorney General, David M. Nocera, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.
Robert Entrup, pro se.
Opinion by Judge RUSSEL.
Defendant, Robert Entrup, appeals the trial court's judgment finding him in contempt of court and imposing sanctions. We affirm in part, vacate in part, and remand with directions.

I. Introduction
The Public Utilities Commission (PUC) alleged that Entrup and his business entities were operating as motor vehicle carriers in violation of statutes that required them to register and provide proof of liability insurance. Entrup responded, asserting, among other things, that he carried liability insurance in the required amounts.
As relevant here, the ensuing dispute yielded two separate orders imposing sanctionsone for a violation of the rules governing discovery and the other for contempt of court. We address each of these orders in turn.

II. Discovery Sanctions
Several weeks after the case was at issue, the PUC informed the trial court that Entrup had failed to serve C.R.C.P. 26(a)(1) disclosures and therefore was in violation of C.R.C.P. 16(b)(5). The PUC later asked the court to compel disclosure of pertinent insurance policies, as well as an insurance card that Entrup's attorney allegedly possessed. The PUC also asked the court to impose sanctions for Entrup's failure to provide the pertinent material in a timely manner.
Entrup resisted the PUC's request. He asserted, among other things, that his Fifth Amendment rights would be violated if he were compelled to produce the information that the PUC sought.
The trial court granted the motion to compel and ordered Entrup to "produce any insurance policy information" within six days. Later, as a sanction for the failure to comply with discovery rules, the court ordered Entrup to pay $3075 in attorney fees.

A. No Fifth Amendment Violation
Entrup contends that the trial court violated his Fifth Amendment privilege against compelled selfincrimination when it ordered him to produce the insurance policy information. We disagree.
The Fifth Amendment protects a person from having to make statements that could, directly or indirectly, subject him to criminal liability. A person may invoke the privilege against compelled selfincrimination in criminal or civil proceedings. Steiner v. Minn. Life Ins. Co., 85 P.3d 135, 139-40 (Colo.2004).
We conclude that Entrup could not properly invoke the privilege against compelled selfincrimination because the Fifth Amendment does not protect the information that the PUC requested.
The PUC sought documents that showed the amount of motor vehicle liability insurance that Entrup carried during the relevant times. Entrup could not avoid disclosing the content of these documents on Fifth Amendment grounds because the privilege against compelled selfincrimination does not protect the content of any voluntarily prepared business record. United States v. Doe, 465 U.S. 605, 610-11 n. 8, 104 S.Ct. 1237, 1240-41, 79 L.Ed.2d 552 (1984).
An individual may resist a request for documents on the ground that the act of production will itself be incriminating. See Fisher v. United States, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976) (act of producing evidence in response to a subpoena has communicative aspects wholly aside from the contents of the papers produced). For the following reasons, however, Entrup could not avoid producing the requested documents.
First, under the "collective entity" doctrine, an individual who acts as an agent for a corporation or other collective entity may not claim a Fifth Amendment privilege over documents that belong to the entity. See Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (partner *1123 may not refuse to produce partnership documents). Thus, Entrup could not avoid producing a document that belonged to one of his business entities on the ground that the act of disclosure would incriminate him personally. See Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) (custodian of corporate records may not resist a subpoena on the ground that the act of production will be personally incriminating).
Second, even if the requested documents belonged to Entrup, the court could compel their production under the "required records" doctrine. This doctrine creates an exception to the Fifth Amendment privilege where the inquiry and the requested records meet three criteria: (1) the purpose of the government's inquiry is regulatory, rather than criminal; (2) the records contain the type of information that the regulated party would ordinarily keep; and (3) the records have assumed public aspects rendering them analogous to public documents. In re Grand Jury Subpoena Duces Tecum (Underhill), 781 F.2d 64, 67 (6th Cir.1986) (citing Grosso v. United States, 390 U.S. 62, 67-68, 88 S.Ct. 709, 713-14, 19 L.Ed.2d 906 (1968)).
Here, the necessary criteria are met:
1. Motor vehicle carriers are required by statute to maintain and file insurance policies to demonstrate that they have liability insurance in the required amounts. See §§ 4010110, 4016104(2), C.R.S.2005. Because the governing statutes are regulatory in nature, the PUC's request was regulatory, not criminal. See In re Grand Jury Subpoena, 21 F.3d 226, 228 (8th Cir.1994) (first criterion is whether "the purpose of the recordkeeping is essentially regulatory"); In re Grand Jury Subpoena Duces Tecum (Underhill), supra, 781 F.2d at 67 (in determining the purpose of the government's inquiry, the relevant question is whether the statute and regulations that require the records' maintenance are regulatory in nature).
2. The PUC sought information that is routinely kept by those who operate motor vehicle carriers. By assuming control over an enterprise that is subject to the government's noncriminal regulatory powers, Entrup effectively agreed to maintain the requested records and forfeited his ability to resist disclosure. See Baltimore City Dep't of Soc. Servs. v. Bouknight, 493 U.S. 549, 558-59, 110 S.Ct. 900, 906-07, 107 L.Ed.2d 992 (1990) (by accepting care of child in need, custodian submitted to the routine operation of the regulatory system and accepted the obligation to permit inspection); Exotic Coins, Inc. v. Beacom, 699 P.2d 930, 948-49 (Colo. 1985) (law that requires merchants to record and report purchases of valuable articles does not violate Fifth Amendment privilege under the required records doctrine).
3. Because insurance policies must be filed with the state, the requested records are analogous to public documents. See In re Grand Jury Subpoena, supra, 21 F.3d at 228 (required records exception applies to documents that must be kept under state laws regulating automobile licensing and titling); Exotic Coins, Inc. v. Beacom, supra.

We therefore conclude that the trial court did not violate Entrup's Fifth Amendment rights when it ordered him to produce the insurance policy information.

B. No Hearing Requested
Entrup argues that the trial court erred by not holding a hearing before imposing sanctions for the discovery violation. We reject this argument.
C.R.C.P. 37(a)(4)(A) allows a court to impose attorney fees for failure to make C.R.C.P. 26(a) disclosures after giving the party "an opportunity to be heard." The trial court must hold a hearing on sanctions if requested. Brown v. Silvern, 141 P.3d 871 (Colo.App. No. 04CA1074, Dec. 1, 2005). But the court is not required to schedule a hearing sua sponte in the absence of a timely request. See Schmidt Constr. Co. v. Becker-Johnson Corp., 817 P.2d 625, 628 (Colo.App. 1991).
*1124 Here, the trial court originally imposed sanctions against both Entrup and his attorney. Entrup's attorney then withdrew, filed a motion for reconsideration, and requested a hearing. The court held a hearing on counsel's motion for reconsideration at which Entrup's new attorney was present. At no point during the process did Entrup request a separate hearing on the discovery sanctions. Therefore, we find no error.

C. Document Not Timely Disclosed
Entrup also argues that the court should not have imposed sanctions for the discovery violation because he eventually disclosed the requested information. This argument is defeated by the express language of C.R.C.P. 37(a)(4)(A), which authorizes sanctions when "requested discovery is provided after the motion [to compel] was filed."
We conclude that the trial court acted within the bounds of its discretion by requiring Entrup to pay the PUC's attorney fees in the amount of $3075 as a sanction for his failure to make the necessary disclosures under C.R.C.P. 26(a)(1). See Gordon v. Boyles, 99 P.3d 75, 82 (Colo.App.2004) (cert. granted Oct. 18, 2004) (order imposing sanctions for discovery violation is reviewed for abuse of discretion).

III. Contempt Sanctions
In February 2004, the trial court entered a stipulated preliminary injunction enjoining Entrup and his businesses from operating as motor vehicle carriers unless they were in compliance with the statutes that govern registration and insurance.
One month later, the PUC sought contempt sanctions against Entrup for violating the preliminary injunction. The PUC alleged that Entrup's company had chartered a bus without securing the necessary insurance. The court issued a contempt citation ordering Entrup to show cause why he should not be punished for violating the preliminary injunction.
In May 2004, Entrup appeared with counsel to defend against the PUC's request for contempt sanctions. Entrup admitted that a bus bearing his company's name had been chartered after the entry of the preliminary injunction, and he admitted that this company had not registered and did not have the requisite insurance. However, Entrup testified that he did not willfully violate the court's order because he had not known that the bus had been chartered.
The court found Entrup in contempt of court. Later, following an evidentiary hearing, the court imposed contempt sanctions as follows:
Defendant Robert Entrup shall be sentenced to confinement for a period of 90 days for knowingly and deliberately violating this Court's February 10, 2004 Order preliminarily enjoining him from operating regulated transport services without [PUC] authority and proof of insurance. This sentence shall be suspended so long as Defendant Entrup tenders to the [PUC] on or before January 31, 2006 $3075 and Defendant Entrup does not provide [PUC] regulated transport services pursuant to Title 40, Articles 10, 11 and 16 of the Colorado Revised Statutes on or before January 31, 2006.
Entrup now contends that the court erred in finding him in contempt of court and imposing sanctions. We agree in part.
To find a party in contempt of court for violation of a lawful order of which the party is aware, the trial court must find that (1) the party did not comply with the order, (2) the party's refusal to comply with the order was willful, and (3) the party had the ability to comply with the order. In re Marriage of Lodeski, 107 P.3d 1097 (Colo.App. 2004). We review the trial court's finding of contempt for an abuse of discretion. In re Estate of Elliott, 993 P.2d 474, 478 (Colo. 2000).
Here, the trial court found that Entrup violated the court's order and that his actions were "knowing and deliberate." Implicit in these findings is the determination that Entrup had the ability to comply with the court's order and chose not to do so. We have reviewed the record, and we perceive no abuse of discretion in the trial court's ruling.
*1125 However, we agree that the order imposing sanctions cannot stand in the absence of further findings.
C.R.C.P. 107 divides contempt actions into categories. As pertinent here, "indirect contempt" occurs out of the sight or hearing of the court, C.R.C.P. 107(a)(3), and may trigger either remedial or punitive sanctions. C.R.C.P. 107(d)(1)(2).
Before a court may impose remedial sanctions for a contempt violation, it must find that the contemnor is presently able to perform the acts required to purge the contempt. C.R.C.P. 107(d)(2); In re Estate of Elliott, supra, 993 P.2d at 479. If the court finds that the contemnor has the present ability to purge the contempt, it may impose fines or imprisonment until the contemnor performs the necessary acts. In re Estate of Elliott, supra, 993 P.2d at 479. The court may not impose a fixed term of imprisonment. In re Marriage of Lodeski, supra, 107 P.3d at 1099.
Punitive sanctions cannot be purged because they are imposed as punishment for a willful violation of a court order. In re Marriage of Nussbeck, 974 P.2d 493, 498 (Colo.1999). In imposing punitive sanctions, the court must observe the procedural requirements of C.R.C.P. 107. These include an express finding that the contemnor's conduct was "offensive to the authority and dignity of the court." C.R.C.P. 107(d)(1). The court may not suspend any part of a punitive sanction based upon the performance or nonperformance of future acts. C.R.C.P. 107(e).
Here, the trial court did not specify whether it was imposing remedial sanctions, punitive sanctions, or both. And we are unable to discern the court's intent from the record alone: the court's order is not entirely consistent with the imposition of remedial sanctions because the court imposed a suspended sentence of fixed duration; nor is it consistent with the imposition of punitive sanctions because the court did not expressly find that Entrup's conduct was offensive to its authority and dignity and because it conditioned the suspended sentence, in part, on the payment of attorney fees.
We therefore vacate the order imposing sanctions for contempt of court and remand for additional findings and, if warranted, the imposition of sanctions consistent with this opinion.
That part of the judgment awarding sanctions for the discovery violation is affirmed. That part of the judgment awarding sanctions for contempt of court is vacated, and the case is remanded for further proceedings consistent with this opinion.
Judge VOGT and Judge CRISWELL[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24511105, C.R.S.2005.